**E-FILED on**    2/12/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT BURSESE,<br><br>      Plaintiff,<br><br>    v.<br><br>PAYPAL, INC.,<br><br>      Defendant. | No. C-06-00636 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 28, 36]** |

    Plaintiff Scott Bursese sets forth six causes of action in his complaint: (1) discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4333; (2) discrimination in violation of California Military and Veterans Code section 394; (3) retaliation in violation of California Labor Code section 1102.5; (4) wrongful termination in violation of public policy; (5) wrongful discipline in violation of public policy; and (6) unlawful business practices under California Business and Professions Code section 17200. Defendant PayPal, Inc. ("PayPal") moves for summary judgment on all of Bursese's claims against it. In addition, Bursese moves for summary judgment, or in the alternative summary adjudication, that (1) Bursese rescinded the termination contract with PayPal and that PayPal's defenses based on that termination contract are unavailable; (2) that Bursese was constructively discharged; (3) that Bursese was discriminated against as a result of his military service; and (4) that

1  PayPal's five affirmative defenses fail. The court heard oral argument on February 2, 2007. The
2  court has read the moving and responding papers and considered the argument of counsel. For the
3  reasons set forth below, the court grants in part and denies in part PayPal's motion for summary
4  judgment and denies Bursese's motion for summary adjudication.

## I. BACKGROUND

6  Plaintiff Scott Bursese began working at PayPal in February 2002 as a consultant to design
7  software to automate testing of the PayPal website. Decl. Scott Bursese Opp'n Def.'s Mot. Summ. J.
8  ("Bursese Opp'n Decl.") ¶ 2. On August 2, 2002, Bursese joined PayPal as a permanent employee in
9  PayPal's automation department, Bursese Opp'n Decl. ¶ 6, where he reported to directly to Yuriy
10 Brodskiy (who reported to PayPal vice president Cameron Bigger). Part of Bursese's role was to
11 design and produce test cases, which were automated testing scripts. Bursese's grade level was
12 designated as T24, his annual salary was $100,000 and his compensation package also included
13 15,000 shares of PayPal stock to be vested as follows: 25% after the first year and 1/48 each month
14 thereafter.

15 During his employment, Bursese reported misuse of certain third party software on at least
16 three occasions. In October 2002, Bursese informed Brodskiy and Bigger that he had observed that
17 members of his department were engaging in software piracy by using more licenses to SilkTest, a
18 third party software program licensed by Segue Software, than the number PayPal was authorized to
19 use. Decl. of George Yuhas Supp. Def.'s Mot. Summ. J. ("Yuhas Decl."), Ex. B, Bursese Dep. at
20 80:19-82:5. In March 2003, Bursese noticed that PayPal engineers were again using the Segue
21 software without paying for licenses. This time he reported his observation both to Sandy Cruze, his
22 supervisor at the time, and Brodskiy, his former manager. Ms. Cruze did not take immediate action
23 and Bursese informed her again of the licensing issue. She stated that she would get around to it
24 eventually. *Id.* at 111:6-113:13; 115:22-117:17.

25 On July 24, 2003, while Bursese was employed at PayPal, he enlisted in the Washington
26 State National Guard. Yuhas Decl., Ex. C, Dep. of Scott Bursese ("Bursese Dep.") at 234:4-235:3.
27 Bursese alleges that his new supervisor, Paul Montgomery (who now reported to Cruze), told
28 Bursese upon finding out that he had joined the National Guard that Montgomery had left Texas

United States District Court
For the Northern District of California

1  "because people there were sort of dense and they were pro-military" and made negative statements
2  about the current administration and the military's role in it.  Bursese also contends that he was
3  taunted by team members Stephen Nelson, Bursese's direct report, and Doroshenko, who, among
4  other things, made fun of his military haircut and asserted that service members were robotic,
5  unintelligent and acted like unthinking individuals.  Others asked if he had ever killed anyone and
6  brought back pictures of corpses.

7       In July 2003 Bursese received orders to report for active duty.  He informed PayPal
8  management that his last day would be August 4, 2003 with an expected return date in early
9  October.  On or around Bursese's last day at PayPal before his military deployment commenced,
10 Montgomery, Bursese's supervisor at the time, allegedly presented him with an individual
11 performance plan, a document that outlined Bursese's employment duties for the quarter during
12 which he would be away on military leave.  Montgomery also asked for Bursese's computer
13 password, which Bursese contends was against PayPal company policy, and reassigned Bursese's
14 test cases to other engineers.

15       On Bursese's first day back from military leave, Montgomery met with Bursese and
16 reassigned him to "more menial tasks" stating something to the effect of "well, I'd like to try to keep
17 you around, because you've done a bunch of good things for the team, but we'll have to see."  Yuhas
18 Decl., Ex. C, Bursese Dep. at 240:17-20.  Subsequent to his return, Bursese was no longer
19 responsible for technical lead and architect level functions he'd previously performed and was
20 instead assigned him to work previously given to the most junior developers.  Following his return,
21 Bursese did not receive a monetary bonus awarded to other members of the team for their collective
22 work in the summer quarter of 2003, during a portion of which time Bursese was away on military
23 leave.

24       Following his return and evaluation of the changes made to the automation system made
25 during his military leave, Bursese noticed an attribution on code that had been checked into the code
26 database by his co-worker Dmitriy Doroshenko that indicated that the code was the proprietary and
27 confidential information of Autodesk, Inc., a third party software company.  Believing the inclusion
28

of this third party code in the PayPal code database to be misappropriation, he again informed his supervisors. *Id.* at 122:20-123:23.

In November 2003, Bursese attempted to transfer out of the automation group to a T25 staff engineer at eBay, PayPal's parent company. Before he could apply for the T25 position at eBay, company policy required Bursese to get Montgomery's approval. Montgomery outlined a large number of tasks for Bursese to complete as a prerequisite to obtaining approval, which Bursese contends prevented him from attempting to transfer. That same month, PayPal also allegedly ceased vesting Bursese's stock options and locked his vested stock, resulting in Bursese being unable to trade either his vested stock or stock options.

In December 2003, PayPal vice president Sal Giambanco from PayPal's human resources group met with Bursese to inform him that he was being asked to either resign or be placed on a performance improvement plan ("PIP"). Yuhas Decl., Ex. D, Depo. of Sal Giambanco ("Giambanco Dep.") 94:13-95:2, 122:20-123:24. Bursese characterizes this as being given the choice between resigning and having his employment terminated on the basis of poor performance. For purposes of this motion, PayPal accepts this characterization at face value. Def.'s Mot. Summ. J. at 5, fn.2. On December 16, 2003, Bursese signed a separation agreement under which PayPal agreed to pay him $25,000, the equivalent of 13 weeks of base pay, and to continue his health benefits under COBRA for 18 months, 6 of them to be at PayPal's expense as a condition of his signing the separation agreement. Yuhas Decl., Ex. G, Separation Agreement. The separation agreement included a "Release of Claims" section under which Bursese released and discharged PayPal from any claims arising out of or relating to employment with PayPal. *See* Yuhas Decl., Ex. G, Separation Agreement ¶ 11. Although Bursese was not required to report to work after December 16, 2003, the separation agreement provided that his employment would continue until January 30, 2004. Yuhas Decl., Ex. A, Bursese Dep. at 221:4-24. Approximately two months after leaving PayPal, Bursese started working at Good Technology at an annual salary of $110,000. Yuhas Decl., Ex. A, Bursese Dep. at 268:16-269:2.

In spite of repeated requests, PayPal did not remit the $25,000 as set forth in the separation agreement (it is not clear whether PayPal paid the COBRA benefits as promised). Bursese Opp'n

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-00636 RMW
MAG                                                            4

Decl. ¶ 28; Decl. of Whitney Leigh in Opp'n Def.'s Mot. Summ J. ("Leigh Decl."), Ex. F (February 17, 2004 email from Bursese to Giambanco regarding $25,000 severance payment). As a result of PayPal's failure to pay, Bursese sent a letter to John Muller, PayPal's general counsel dated January 24, 2005, informing him that was rescinding the December 2003 separation agreement. *Id.* ¶ 29, Ex. D. On June 7, 2005, PayPal finally sent Bursese a check for $30,000 for the original severance amount of $25,000 plus $5,000 in interest, stating that the original sum had not been processed "due to an internal administrative oversight." *Id.* ¶ 29 , Ex. E. Bursese evidently did not cash the check. This case was subsequently filed on January 30, 2006.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is granted where there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Nissan Fire* the Ninth Circuit stated:

> In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted). In response to a properly supported motion, the responding party must present specific facts showing that contradiction is possible. *British Airways Board. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978). The responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial.

The court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under FED.R.CIV.P. 56(d) the court may also "make an order specifying the facts that appear without substantial controversy, including to which . . . relief is not in controversy."

### B.  Constructive Discharge

Plaintiff moves for summary adjudication that he was constructively discharged from PayPal. Bursese resigned from PayPal on December 16, 2003, after being offered the option of either

1  continuing his employment at PayPal under a PIP or accepting a severance package that included
2  $25,000 and continued paid benefits under PayPal's health insurance for 6 months.
3      Constructive discharge occurs when, "looking at the totality of the circumstances, 'a
4  reasonable person in [the employee's] position would have felt that he was forced to quit because of
5  intolerable and discriminatory working conditions.'" *Wallace v. City of San Diego*, 460 F.3d 1181,
6  1189-90 (9th Cir. 2006) (citing *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).
7  The evidence in the record concerning the environment created by either Bursese's reports of third
8  party software misuse or his membership in the Washington National Guard does not reasonably rise
9  to the level of "intolerable and discriminatory working conditions."  With regard to software misuse,
10 there is evidence only of a single comment by Nelson, a member of Bursese's team, that Bursese was
11 "in bed with Segue" in a meeting with Brodskiy and Bigger.  Yuhas Decl., Ex. B, Bursese Dep. at
12 113:19-114:4.  Regarding his military service, the evidence demonstrates that Bursese's supervisor,
13 Montgomery, made a general comment that he had left Texas because it was pro-military and had
14 "some disparaging comments about the current administration ... and the military's connection with
15 that".  Yuhas Decl., Ex. C, Bursese Dep. at 77:16-25; 263:11-18.  Also, when Bursese informed him
16 about entering military service, Montgomery allegedly released a dramatic sigh and wished him luck
17 in a facetious manner.  *Id.* at 47:25-48:8.  Montgomery denies this behavior.  Decl. of Paul
18 Montgomery in Opp'n to Plf.'s Mot. Summ. J. ("Montgomery Decl.") ¶ 3.  However, the evidence
19 also shows that Montgomery permitted Bursese to take additional time off following his return from
20 training and that Montgomery's supervisor, Cruze, was supportive of Bursese's military service.
21 Yuhas Decl., Ex. C, Bursese Dep. at 51:15-21 ("And [Montgomery] said, sure, no problem, take as
22 much time as you need."), 47:24-25 ("I recall that Ms. Cruze was very positive and encouraging.").
23 Even combining these incidents with the additional unspecified comments attributed to Bursese's
24 fellow engineers regarding his haircut, the robotic qualities of members of the military, and guns, the
25 evidence is insufficient to support the conclusion that the work environment was intolerable.  *Id.* at
26 57:6-58:14 ("I remember the gist of what was being conveyed, of one that people in the military
27 were robotic, unintelligent, had stupid haircuts, acted like unthinking individuals. That perhaps they
28 had murderous inclinations."), 266:19-18.

At base, however, "the proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246-47 (1994). Bursese testified that PayPal's offer to either be placed on a PIP or to resign with a severance package as a choice between termination for poor performance and resignation. Defendant agreed to "accept[] Bursese's testimony at face value" for purposes of the present motions. Def.'s Mot. Summ. J. at 5, fn.2. Offering an explicit choice between resignation and termination of employment for poor performance may rise to the level of constructive discharge, depending upon the factual circumstances. Providing Bursese with such a choice merely two months after his return presents an issue of fact as to whether Bursese merely accepted one of two rational options or was constructively discharged by PayPal. This court does not, however, opine as to whether PayPal's actions amounted to constructive discharge in this case.

### C.     Adverse Employment Action

Plaintiff's discrimination and retaliation claims require that he had been subject to an adverse employment action. PayPal contends that plaintiff's wrongful termination claims fail because, it argues, Bursese did not suffer an adverse employment action.

Plaintiff's pay and employee grade never changed. But the evidence shows that Bursese was assigned to relatively simple tasks as compared to his job responsibilities prior to taking military leave. Prior to taking military leave, he was leading the automation team and working on high-level system performance projects with eBay and PayPal, which included meeting with heads from eBay. When he returned, he was no longer a lead and the team members who had previously received assignments from Bursese were receiving them from Montgomery. Additionally, Bursese was no longer the primary contact with other groups as he had been before. Yuhas Decl., Ex. C, Bursese Dep. at 276:18-277:3 (before military leave), 277:16-22 (after return). Bursese was also asked to set up new testing machines – a task that could have been performed by PayPal's information technology department rather than experienced engineers. *Id.* at 278:8-21. PayPal has explained the reassignment of Bursese's test cases as a necessary practice to assure that the work continued during Bursese's military leave. Montgomery Decl.¶ 7. It also states that the work that is available at PayPal changes somewhat from time-to-time. *Id.* ¶ 10. It is plausible that these alterations in

1  Bursese's duties were temporary either until another project came along or until PayPal could
2  reintegrate him into the larger project roles he had once held.

Whether or not the changes in Bursese's post-leave job duties constitute adverse employment action, as set forth above, Bursese was given the choice within two months of his return between implementation of a PIP or resignation with severance. As set forth above, the court determined that there is an issue of fact as to whether this rose to the level of constructive discharge. Because constructive discharge can constitute an adverse employment action, *see, e.g., Pa. State Police v. Suders*, 542 U.S. 129 (2004), plaintiff has raised a material issue of fact as to whether plaintiff was subject to adverse employment action.

### D.  Retaliation Claims

Plaintiff contends that he was retaliated against both (1) because of his service in the Washington State National Guard and (2) for having reported misuse by PayPal engineers of third party software.

#### 1.  USERRA and California Miliary and Veterans Code Section 394

USERRA prohibits discrimination in employment on the basis of military service. To determine whether an employer retaliated against an employee for exercising his rights under USERRA, the court "must first decide whether the employee exercised such rights, thereby coming within the class of persons protected by the statute. If so, then we apply the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983)." *Wallace v. City of San Diego*, 460 F.3d 1181, 1188 (9th Cir. 2006) (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898-99 (9th Cir. 2002)). "Under the scheme set forth in *Transportation Management*, the employee first has the burden of showing, by a preponderance of the evidence, that his or her protected status was 'a substantial or motivating factor in the adverse [employment] action;' the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Leisek*, 278 F.3d at 899 (alteration in the original); *see also Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (the employee making a USERRA claim bears "the initial burden of showing by a preponderance of the evidence that the employee's military service

was 'a substantial or motivating factor' in the adverse employment action" thereafter, "the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason"). The same analysis applies to plaintiff's claim under California Military and Veterans Code section 394. *See Tarin v. Los Angeles*, 123 F.3d 1259, 1266 (9th Cir. 1997) (analyzing state and federal military discrimination claims under the same framework), *superseded by statute on other grounds as stated in Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 n.2 (9th Cir. 2001).

Discriminatory motivation is a factual question that can be proven with either direct or circumstantial evidence. *Sheehan*, 240 F.3d at 1014. In *Sheehan*, the Federal Circuit stated that discriminatory motivation under the USERRA may be inferred from a variety of factors, including

> [1] proximity in time between the employee's military activity and the adverse employment action, [2] inconsistencies between the proffered reason and other actions of the employer, [3] an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and [4] disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.*; *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).

Plaintiff presents arguments as to each of the *Sheehan* factors, however, he submits little evidence sufficient to demonstrate any nexus at all between his military service and the purported adverse employment actions. As to the first factor, the time between plaintiff's return from military leave and the reduction in his duties and later resignation under the circumstances set forth above in the discussion of constructive discharge was admittedly short.

Regarding the second factor, defendant has put forth evidence that it would have reduced Bursese's duties and offered him the choice between a PIP and separation package independent of his military service. PayPal points to evidence that "there were ... significant performance issues that were [] on the horizon," *Id.*, Giambanco Dep. 95:7-9, and that Bursese was underperforming compared to the other engineers on his team, Yuhas Opp'n Decl., Ex. C, Dep. of Paul Montgomery ("Montgomery Dep.") 47:10-15 (Nelson submitted 120 test cases, Doroshenko submitted 50-60, Montgomery submitted 20, Bursese submitted 4-8). PayPal has also submitted two memoranda written following Bursese's return from military leave, one of them a draft of the PIP which would have been put in place for Bursese had he not resigned, detailing Bursese's performance issues.

Montgomery Decl. Exs. A, B. Bursese, on the other hand, presents evidence via declaration that Montgomery forced him to sign an individual performance plan at the end of the day on September 30, 2003 (his last day at PayPal before starting his military leave) setting forth unreasonable goals to be accomplished during the time he was to be away. Bursese Opp'n Decl. ¶ 11. Montgomery denies that he presented Bursese with such a plan. Montgomery Decl. ¶ 5.[1]

Regarding the third factor, there is little evidence that PayPal or anyone at PayPal expressed hostility toward service members. PayPal has a policy that provides its employees who take military leave with their full salary during their leave. Yuhas Decl., Ex. D, Dep. of Sal Giambanco ("Giambanco Dep.") 64:1-9. Further, as discussed above, the undisputed evidence shows that Bursese's supervisors, Montgomery and Cruze, were both supportive of plaintiff's military service. Yuhas Decl., Ex. C, Bursese Dep. at 51:15-21 ("And [Montgomery] said, sure, no problem, take as much time as you need."); 47:24-25 ("I recall that Ms. Cruze was very positive and encouraging.").

Finally, as to the fourth factor, plaintiff has proffered evidence that he was commended for his performance prior to his joining the National Guard.[2] Bursese Opp'n Decl. ¶¶ 7, 8. On the other hand, PayPal has presented some evidence that well before Bursese joined the military, his relationships with his co-workers and supervisors were deteriorating. Yuhas Decl., Ex. A, Bursese Dep. at 145:11-23, 149:1-14, 152:11-22, 159:11-160:17, 176:21-179:2; *Id.*, Ex. D, Giambanco Dep. at 55:17-56:25, 52:16-53:10. This decline apparently continued following his return. Montgomery Decl. ¶ 13. Even combined with the allegation that Bursese did not receive a bonus awarded to his team members for work done while he was away on military leave, there is little evidence that plaintiff was treated differently from his peers in any negative fashion following his announcement that he had entered military service.

---

[1] Notably, Bursese presents an unauthenticated copy of an individual performance plan dated August 1, 2003, bearing what appears to be Bursese's signature. Leigh Decl., Ex. H.

[2] As discussed above, the court gives very little weight to plaintiff's evidence that his team members were given a bonus that he was not, as that discretionary bonus was awarded to employees who had worked on a project during the period when plaintiff was on military leave. Plaintiff has submitted no evidence that other team members were not actively working on the project during the relevant project period were given this bonus.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-00636 RMW
MAG                                     10

In sum, plaintiff's claims that he was wrongfully discriminated against as a result of his military service are largely conclusory. Although plaintiff's evidence is weak, in light of the timing of the poor performance review, the court does not believe that PayPal has established as a matter of law that plaintiff's USERRA claim fails. Therefore, the court denies defendant's motion for summary judgment on plaintiff's USERRA claim.

### 2. USERRA Wrongful Discharge Claim (38 U.S.C. Section 4316(c))

PayPal contends that plaintiff's wrongful discharge claim under 38 U.S.C. section 4316(c) cannot survive because section 4316(c) is inapplicable to this action. Section 4316(c) provides:

> A person who is reemployed by an employer under this chapter shall not be discharged from employment, except for cause – ... (2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

This section, according to PayPal, only affords an employee like Bursese, who served between 30 and 180 days, six months' job protection after their return. Bursese's employment terminated on January 30, 2004 according to the separation agreement. This date was four months after Bursese's return from military service and PayPal paid him an amount sufficient to compensate for an additional two months, as well as extended his benefits to include that two month period as part of the separation package. Thus, PayPal argues that even if plaintiff's separation from PayPal could be considered constructive termination, the fact that PayPal covered plaintiff's salary and benefits for over two months following plaintiff's return establishes that it was in compliance with section 4316(c)(2). PayPal cites no authority for the argument that severance compensation somehow constitutes employment for purposes of section 4316(c). The court rejects this argument and denies defendant's summary judgment motion as to plaintiff's wrongful discharge claim to the extent it relies on section 4316(c).

### 3. Whistle Blowing Claim (California Labor Code Section 1102.5)

The court analyzes a 1102.5 retaliation cause of action as follows: (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation. *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1384 (2005). To establish a prima facie case for retaliation under Section 1102.5, "an employee must show (1) that he engaged in

protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." *Love v. Motion Indus.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) (Jenkins, J.) (citing *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 69 (2000)).

California Labor Code Section 1102.5(b) provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." PayPal contends, and this court agrees, that Cal. Labor Code Section 1102.5(b) does not apply to plaintiff because he only reported his concerns to a private employer, rather than a public agency. *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 77 (1988) ("Section 1102.5 subdivision (b) concerns employees who reports to public agencies. It does not protect plaintiff, who reported his suspicions directly to his employer.").

Plaintiff argues that section 1102.5(c), which states "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation," provides the basis for his protected activity. First, plaintiff presents no evidence that he was refusing to participate in any activity. Second, section 1102.5 implicates a state or federal violation. Cal. Lab. Code § 1102.5(c). Plaintiff contends that reporting a potential violation of a third party's intellectual property rights is protected under section 1102.5 because it constitutes a refusal to participate in an activity that would result in the violation of federal statute. The violation, according to plaintiff, was the use of a third party's intellectual property because the Constitution provides for the promotion of "the progress of science and useful arts" under Article I, section 8. The court finds this argument unpersuasive. Because plaintiff has failed to make out a prima facie case, the court grants summary judgment on plaintiff's section 1102.5 claim in favor of defendant PayPal.

### 4.   Termination and Discipline in Violation of Public Policy

California law provides for a "tort cause of action for wrongful terminations that violate public policy." *See Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). The right to

terminate an employee at will may be limited by "fundamental principles of public policy" even if it is not limited by contract. *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (1980). The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund*, 347 F.3d at 758 (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998)).

Fundamental public policy can include the duty not to discriminate against a class of individuals protected by statute. *See Rojo v. Kliger*, 52 Cal. 3d 65, 91 (1990). Here, the court agrees that, to the extent that plaintiff's claim relies upon his USERRA claim, there is an issue of fact regarding whether plaintiff was constructively terminated in violation of public policy, since military service members are a class of individuals protected by statute.

Plaintiff's claim for termination in violation of public policy fails, however, to the extent that it relies on the allegation that Bursese was disciplined or that his employment was terminated as a result of his having reported PayPal's alleged misuse of software. As stated above, in wrongful termination actions based on violations of public policy, the public policy must derive from constitutional or statutory authority. *Freund*, 347 F.3d at 758; *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1095 (1992). The termination of employment must affect a duty that inures to the benefit of the public at large. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 669 (1988). As with plaintiff's argument that reporting violations of a third party's software license is a refusal to participate in an activity that would result in the violation of federal statute under Cal. Labor Code § 1102.5, the court finds the argument that reporting potential violations of a third party company's intellectual property implicates a fundamental public policy to be unavailing. Summary judgment on plaintiff's claims of termination and discipline in violation of public policy is granted in favor of defendant to the extent that plaintiff's claim relies upon plaintiff's report of potential misuse of third party software.

Plaintiff also contends that he was wrongfully disciplined in violation of public policy. Plaintiff has failed to present evidence that he was wrongfully disciplined. PayPal's failure to award

a discretionary bonus to Bursese for a project he was not present to work on is insufficient to rise to the level of a disciplinary action. Further, he chose to resign rather than be placed under the PIP. Therefore, the court finds no evidence that plaintiff was disciplined by PayPal.

### E. Unfair Competition (California Business and Professions Code Section 17200)

As set forth above, plaintiff's retaliation and wrongful termination claims fail to the extent that they seek to rely on his reporting of alleged infringement of third party software by PayPal engineers. In light of that ruling, it is unclear what remedy the plaintiff seeks to recover by way of his section 17200 claim. To the extent he seeks an injunction of the alleged misuse of third party intellectual property, the undisputed facts establish that after each of defendant's disclosures that there was overuse of the Segue software, Bursese's supervisors contacted the licensing manager to verify the licensing situation. Further, the undisputed facts establish that the code that Dimitri Doroshenko installed into PayPal's automated testing software (1) was freely-distributed code downloaded from BetaSoft, a website that includes a public forum related to software quality assurance issues and (2) has been removed from PayPal's software. Decl. of Dimitri Doroshenko Supp. Def.'s Mot. Summ. J. ¶¶ 3-6. Accordingly, because plaintiff fails to state a claim for relief under section 17200, defendants motion for summary judgment as to this claim is granted.

### F. Affirmative Defenses

Bursese seeks summary judgment as to each of PayPal's affirmative defenses: (1) failure to state a claim; (2) waiver and estoppel; (3) statute of limitations and laches; (4) plaintiff's claims have been released pursuant to the December 16, 2003 separation agreement; and (5) failure to mitigate. The court declines to enter summary judgment as to defendant's affirmative defenses of failure to state a claim, and statute of limitations and laches, finding based on the evidence on the record that these defenses may yet come into play. PayPal does not seriously contest that its failure to mitigate defense fails in light of the fact that Bursese secured a higher paying job following his employment at PayPal. *See, e.g.,* Def.'s Mot. Summ. J. at 6 ("Recognizing that his post-PayPal salary was higher than his PayPal salary, Bursese does not claim post-PayPal lost-salary damages."). Therefore, the court grants plaintiff's motion for summary adjudication as to defendant's failure to mitigate defense.

As to defendant's second and fourth affirmative defenses of waiver, plaintiff seeks summary adjudication that he successfully rescinded the separation agreement by sending a letter in January 2005 to PayPal's general counsel with the following text:

> Please be informed that I am hereby rescinding the employment separation agreement that was signed by me and by Salvatore J. Giambanco on December 16, 2003, a copy of which is enclosed for you reference. The basis for rescission is (a) that for more than 13 months PayPal has failed to honor its promise, set forth in Section 2 of the agreement, to pay me a lump sum amount of $25,000, and (b) that I was induced to enter the agreement by the oppressive conduct of my immediate supervisor, Paul Montgomery.

Bursese Opp'n Decl., Ex. D.

The grounds for rescission by a party to a contract are stated in Civil Code section 1689(b), which states, *inter alia*, that a party to a contract may rescind the contract "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds" or "[i]f the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause." Cal. Civ. Code § 1689(b)(2) & (4). PayPal acknowledges that its delay in paying the $25,000 may raise an issue as to whether the consideration for the settlement agreement failed, nevertheless it contends that payment was delayed as a result of an administrative error and that PayPal honored the extension of Bursese's benefits so that the consideration did not fail materially. Def.'s Opp'n to Plf's Mot. Summ. J. at 14. ("PayPal further concedes that the delay in making payment, however inadvertent, creates an issue of fact as to whether there was a sufficient failure of consideration to support Bursese's rescission attempt."). The court agrees that there remains an issue of material fact as to whether Bursese rescinded the separation agreement and thus denies plaintiff's motion for summary adjudication that the contract was rescinded.

### III. ORDER

For the foregoing reasons, the court orders as follows:

1. Defendant's motion for summary judgment on plaintiff's USERRA and California Military and Veterans Code section 394 claims is denied.

2. Defendant's motion for summary judgment on plaintiff's claim under California Labor Code section 1102.5 is granted.

3. Defendant's motion for summary judgment on plaintiff's claim for wrongful termination in violation of public policy is granted to the extent it seeks to rely on plaintiff's reporting of PayPal's alleged misuse of third party software.

4. Defendant's motion for summary judgment on plaintiff's claim for wrongful discipline in violation of public policy is granted.

5. Defendant's motion for summary judgment on plaintiff's claim under California Business and Professions Code section 17200 is granted.

6. Plaintiff's motion for summary adjudication that he successfully rescinded the separation agreement is denied.

7. Plaintiff's motion for summary adjudication that he was constructively discharged is denied to the extent of his claim that he was in essence fired by being given choice of staying on with a performance improvement plan in place and resignation with severance. The court does not otherwise find a triable issue that the workplace was so intolerable as to cause him to be constructively discharged.

8. Plaintiff's motion for summary adjudication on defendant's affirmative defenses is denied as to all but defendant's failure to mitigate defense. The court grants plaintiff's motion regarding the failure to mitigate defense.

DATED:     2/12/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Matt Gonzalez          mgonzalez@gonzalezleigh.com, linglis@gonzalezleigh.com
G. Whitney Leigh       wleigh@gonzalezleigh.com, gladmin@gonzalezleigh.com
Juan Enrique Pearce    epearce@gonzalezleigh.com

**Counsel for Defendants:**

Christian N. Brown     cbrown@orrick.com
George A. Yuhas        gyuhas@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     2/12/07                              /s/ MAG
                                         **Chambers of Judge Whyte**